THE DE KALB BANK, Plaintiff and Counterdefendant-Appellee, v. DWIGHT KLOTZ et al., Defendants (Sandwich State Bank, Counterplaintiff-Appellee; Dwight Klotz, Counterdefendant).

Second District   No. 2—85—0860

Opinion filed December 31, 1986.—Rehearing denied February 9, 1987.

David J. Witheft, of Boyle, Cordes, Witheft & Brown, of De Kalb, for appellant.

Daniel J. Kramer, of Law Office of Daniel J. Kramer, of Yorkville, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, The De Kalb Bank (De Kalb), brought an action in replevin in the circuit court of Kane County against defendants, Dwight Klotz (Klotz) and Hinckley Grain Company, to recover possession of farm equipment, cattle, and grain owned by Klotz. Counterplaintiff, Sandwich State Bank (Sandwich), intervened asserting a first-in-time priority lien to that of counterdefendants De Kalb and Klotz. The trial court, after a bench trial, awarded the cattle to Sandwich based upon its finding that Sandwich had a first-in-time priority lien to the later-in-time lien of De Kalb. De Kalb appeals asserting, as it did below, that it had a perfected purchase money security interest and, therefore, a priority lien in the cattle. The parties agree that only the cattle purchased by Klotz and delivered to him between February 3 and October 31, 1984, are involved in this appeal.

The record discloses that Sandwich acquired a security interest in the assets of Klotz' farm in 1973 to secure future farm loans. The financing statement it filed in 1973 with the Kane County recorder of deeds remained in effect up to and during the time of trial. De Kalb concedes that Sandwich held a perfected security interest in all of the subject cattle, albeit subordinate to that of De Kalb.

De Kalb's first known financing statement was filed in 1975 also covering all of the present and after-acquired assets of Klotz' farm. De Kalb's financing statement was continued in 1980 as required by section 9—403 of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1979, ch. 26, par. 9—403). This financing statement lapsed in January of 1985. However, De Kalb also filed financing statements bearing the same general description of farm assets including "livestock" in 1982 and on February 7, 1984, covering "livestock" then owned and thereafter acquired by debtor Klotz.

The parties have stipulated that all the cattle in question were bought through the application of funds loaned by De Kalb. The cattle were obtained by Klotz through a series of transactions in which

Klotz would buy the cattle from a selling merchant and pay for them by a check drawn on Klotz' account at De Kalb. Within a few days after the purchase, Klotz would go to De Kalb and borrow an amount equal to the amount of the invoice and the amount of the check written to the cattle seller. De Kalb deposited the loan amount directly to the debtor's account with De Kalb against which the check was written. The particular financing statement upon which De Kalb relies is the one filed February 7, 1984, which, therefore, was filed within 20 days of the first delivery (see Ill. Rev. Stat. 1983, ch. 26, par 9—107(b)), which occurred on February 3, 1984, and predates all subsequent deliveries.

De Kalb contends that: (1) its financing statement filed February 7, 1984, satisfies the requirements for a perfected purchase money security interest as to the cattle acquired between February 4 and November 30, 1984; (2) the general description of a variety of chattels but including "livestock" is a sufficient description in its financing statement to satisfy purchase money security interest status; (3) no exception is made in sections 9—107, 9—110, 9—402, or any other section of the UCC that would require more specific descriptions for the perfection of a purchase money security interest for an otherwise perfected security interest; (4) it is undisputed that the cattle in question were purchased with funds from the loans made by De Kalb for that purpose; and (5) purchase money security status can never be determined from the filed financing statement; rather, it must be determined from the facts of the transactions for which the security interest was given.

Sandwich maintains that: (1) De Kalb inadequately described the subject cattle in its February 7, 1984, financing statement as "livestock" so that, while that description was sufficient to give both Sandwich and De Kalb security interests in the cattle, it was insufficient to meet the test of a purchase money security interest so as to confer a priority over Sandwich's first-in-time perfected financing statement; (2) De Kalb's description of the cattle as "livestock" would defeat the notice objectives of the UCC (Ill. Rev. Stat. 1983, ch. 26, par. 9—101 et seq.) by not disclosing to one examining the financing statement the purchase money security interest claimed by De Kalb; and (3) the trial court erred in admitting into evidence the financing statement which De Kalb filed on February 7, 1984, because it was altered by De Kalb after the complaint in this case was filed.

Sandwich acknowledges that both banks have perfected "blanket liens" but maintains that since it was undisputably the first in time to have perfected its lien, it has the priority security interest in the cat-

tle, which number approximately 200. Sandwich characterizes the issue before this court as a priority dispute between De Kalb and Sandwich, not as to who has the prior perfected security interest against the holder of a purchase money security interest, but rather one as to which of two perfected blanket lien creditors should prevail where Sandwich was indisputably the first to file and perfect its lien.

The question presented to us is whether De Kalb's undisputed security interest in "livestock" filed February 7, 1984, acquired a "purchase money security interest" priority by reason of De Kalb's advance of loan funds to purchase the specific cattle in which it claims a purchase money security interest priority.

Section 9—109(3) of the UCC defines "goods" for the purposes of the UCC as "farm products" if they are "livestock" in their unmanufactured state in the possession of a debtor engaged in raising, fattening, grazing, or other farming operations. (Ill. Rev. Stat. 1983, ch. 26, par. 9—109(3).) Section 9—402 of the UCC provides:

> "A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security agreement otherwise attaches. When the financing statement covers crops growing or to be grown, the statement must also contain a description of the real estate concerned" (Ill. Rev. Stat. 1983, ch. 26, par. 9—402(1))

and:

> "[a] financing statement substantially complying with the requirements of this Section is effective even though it contains minor errors which are not seriously misleading." Ill. Rev. Stat. 1983, ch. 26, par. 9—402(8).

Section 9—107(b) defines a "purchase money security interest" (insofar as it applies to the instant case) as:

> "[a] security interest is a 'purchase money security interest' to the extent that it is ***
>
> (b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used." (Ill. Rev. Stat. 1983, ch. 26, par. 9—107(b).)

Priorities among conflicting security interests in the same collateral are established pursuant to the provisions of section 9—312 of the

UCC. They provide, as relevant to the facts of the instant case:

"[a] purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 20 days thereafter." Ill. Rev. Stat. 1983, ch. 26, par. 9—312(4).

A recent decision of the appellate court rendered after the briefs of the parties had been filed in this appeal resolves at least one of the major issues in dispute in this case. The facts of *First National Bank v. Trail Ridge Farm, Inc.* (1986), 143 Ill. App. 3d 244, 492 N.E.2d 1030 are remarkably similar to those of the case at bar. In *Trail Ridge* both the First National Bank of Vandalia (Vandalia) and the First National Bank of Belleville (Belleville) asserted a perfected security interest in cattle. Vandalia asserted a first-in-time lien much as does Sandwich in the instant case. Belleville asserted a purchase money priority lien as does De Kalb here. The court held that it was undisputed that the cattle had been purchased by Trail Ridge with funds allocated to it for that purpose by Belleville. Therefore, Belleville was found to have a purchase money security interest priority in the cattle pursuant to section 9—107(b) of the UCC (Ill. Rev. Stat. 1975, ch. 26, par. 9—107(b)). It is apparent from the *Trail Ridge* court's analysis that, assuming a perfected security interest, a purchase money security interest is determined by analyzing the underlying transactions in the collateral. In *Trail Ridge*, as in the case at bar, the underlying transactions were the purchase of cattle with funds loaned for that purchase and in which the lender took back a security interest for the advancement of the purchase money.

In the case at bar, as in *Trail Ridge*, the security interest of De Kalb became a purchase money security interest when De Kalb made advances and, thus, gave value to enable the debtor to acquire rights in the collateral. It is conceded by Sandwich that the value loaned was, in fact, used for the purchase of the subject cattle. See Ill. Rev. Stat. 1983, ch. 26, par. 9—107(b).

Without citation to any direct authority, Sandwich next argues that while "livestock" sufficed to describe the cattle for which it claims its security interest (Ill. Rev. Stat. 1983, ch. 26, par. 9—109(3)), "livestock" was insufficient to describe the cattle for the purpose of De Kalb's claimed purchase money security interest. We can find no authority for this proposition and the cases which Sandwich cites as supporting its position are inapposite. We conclude that there are no special requirements for the description of collateral in a financing

agreement for purchase money security interest beyond that required for the perfection of a "general" security interest.

█ We further conclude that Sandwich's contention that purchase money priority status must appear from an examination of the filed financing statement and that its absence would be a deficiency going to the heart of the notice system is without supporting authority. In fact, the UCC (Ill. Rev. Stat. 1983, ch. 26, par. 9—101 *et seq.*) imposes no requirement that the financing statement evidence the purchase money security interest for which a priority is claimed. (See, *e.g.*, Ill. Rev. Stat. 1983, ch. 26, pars. 9—107(b), 9—110, 9—312(4).) In fact, a purchase money security interest exists only where it secures funds advanced for the actual purchase of the collateral. See Ill. Ann. Stat., ch. 26, par. 9—107, Code Comment, at 75 (Smith-Hurd 1974).

By way of contrast, not all advances of purchase money will result in a purchase money security interest. In *North Platte State Bank v. Production Credit Association* (1972), 189 Neb. 44, 200 N.E.2d 1, a debtor had acquired both possession and title to livestock collateral two months before the financing bank loaned him the purchase money funds. The court held that the financing bank did not acquire a security interest in the cattle. The court said:

"[a]s we have pointed out section 9—107(b), U.C.C., provides that a security interest cannot become a purchase money security interest unless it is taken by a person who by making advances or incurring an obligation gives value to enable the debtor to *acquire rights in or the use of collateral* if such value is in fact so used. Clearly, the Bank could not qualify as the seller of the 79 cows. Obviously, by advancing the $20,000 and taking the mortgage it did acquire a security interest in the cows. The distinction is vital to the disposition of this case. The money advanced by the Bank enabled Tucker to pay the price to Seller for the cows. But it was not used by Tucker to acquire any rights in the cows because he already had all the possible rights in the cows he could have with both possession and title." (Emphasis in original.) 189 Neb. 44, 51-52, 200 N.W.2d 1, 6.

█ Finally, Sandwich, the appellee, contends that the trial court erred in admitting into evidence over its objection, the security agreement filed February 7, 1984, upon which De Kalb bases its claim of the purchase money security interest. Sandwich contends that the inherent unreliability of a document altered by a party litigant should have prevented its admission. However, Sandwich failed to cross-appeal the issue of the admission of the document into evidence and,

thus, has waived our consideration of it. *Hackler v. Cardinal Newman College* (1979), 71 Ill. App. 3d 665, 667-68, 389 N.E.2d 960; 103 Ill. 2d R. 303(a).

We reverse the judgment of the circuit court of Kane County and enter judgment for The De Kalb Bank. This cause is remanded for any other proceeding that may be necessary to implement our holding.

Reversed and remanded.

UNVERZAGT and WOODWARD, JJ., concur.