**ITT COMMERCIAL FINANCE CORP.,**
**Appellant (Plaintiff Below),**

v.

**UNION BANK & TRUST COMPANY OF NORTH VERNON, Indiana,**
**Appellee (Defendant Below).**

**No. 16A04–8711–CV–357.**

Court of Appeals of Indiana,
Fourth District.

Oct. 4, 1988.

Christopher E. Baker, Rubin & Levin, Indianapolis, for appellant.

Corinne R. Finnerty, McConnell, Finnerty & Roche, North Vernon, for appellee.

CONOVER, Presiding Judge.

Plaintiff–Appellant ITT Commercial Financial Corp. (ITT) appeals an order denying its motion for summary judgment and granting summary judgment in favor of Defendant–Appellee Union Bank & Trust Company (Bank) in this priority of liens case.

We reverse.

At issue here is whether the Bank had a perfected priority purchase money security interest in a debtor's inventory.

ITT brought an action in replevin and for damages. In short, ITT alleged the Bank wrongly held "approximately 23" motorcycles belonging to Steven H. Gresham d/b/a Midway Cycle Sales, a Chapter 13 bankrupt, and ITT had a perfected security interest in these motorcycles superior to any lien asserted by the Bank.[1] (R. 12–14). In

---

1. The second count of the complaint is not at issue. The parties agree the Bank is entitled to summary judgment on it.

relevant part, the Bank's answer admitted it had possession of the motorcycles and had refused ITT's demand for them. The Bank denied ITT had a security interest in the motorcycles or was entitled to possession of them. (R. 41–42). The Bank "counterclaimed," alleging it had a priority purchase money security interest in the motorcycles and was entitled to them. (R. 42–43). ITT denied the Bank's counterclaim and asserted, in sum, the Bank's claim of a security interest was inferior to inventory and purchase money security interests held by ITT. (R. 45–47).

ITT moved for summary judgment on its complaint and on the Bank's counterclaim. (R. 64). In addition to its memorandum in support of the motion, (R. 69–76), ITT attached the affidavit of Jeff Greene, (R. 66–68), several exhibits, (R. 68A–M), and incorporated the published deposition of Donald Pritchett, (R. 63). The Bank responded with a memorandum. The memorandum referred to testimony and evidence taken at an earlier hearing about prejudgment possession and to Pritchett's deposition. The Bank did not otherwise submit affidavits or additional evidence. The Bank concluded, in relevant part, there were genuine issues of material fact or inferences to be drawn from the facts which precluded summary judgment in favor of ITT. (R. 82–90). The court overruled ITT's motion for summary judgment and, under Ind. Rules of Procedure, Trial Rule 56(B), granted summary judgment to the Bank on its counterclaim, although the Bank had not asked it to do so. The court denied ITT's motion to correct error, (R. 113), and ITT appeals.

■ Summary judgment is appropriate only in limited situations. Ind. Rules of Procedure, Trial Rule 56 provides in part

(C) *Motion and Proceedings Thereon.*

... The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions and affidavits filed pursuant to Trial Rule 5(D), together with any testimony show that there is *no genuine issue as to any material fact,* and

that *the moving party* is entitled to judgment *as a matter of law.* ...

(E) *Form of Affidavits—Further Testimony*

*—Defense Required.* ...

When a motion for summary judgment is made and *supported as provided in this rule,* an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, *if appropriate,* shall be entered against him. ... (Emphasis supplied).

Thus, the moving party carries the burden of establishing:

(a) there is no issue as to any material fact, and

(b) he is entitled to judgment as a matter of law.

*Creighton v. Caylor–Nickel Hospital, Inc.* (1985), Ind.App., 484 N.E.2d 1303, 1305–1306. The moving party must fulfill these two requirements before any burden shifts to the nonmovant. *Id.*

■ In a recent case we discussed this proposition stating

The method of ascertaining whether a material factual issue exists is as follows: Facts alleged in the complaint are taken as true except to the extent that they are negated by other pleadings, depositions, answers to interrogatories, affidavits, or other evidence presented by the moving party. (citing cases) All of which amounts to requiring the party moving for summary judgment to shoulder the burden of establishing the lack of material factual issue. ... Once the movant makes such a showing, the opposing party may not rest on his pleadings, but must then demonstrate the existence of a genuine issue for trial. (citing cases).

*Kahf v. Charleston South Apartments* (1984), Ind.App., 461 N.E.2d 723, 729, *trans. denied.* Therefore, the nonmovant may rest upon his pleadings until the moving party establishes no genuine factual issue exists. If, however, the moving par-

**1152**

ty successfully demonstrates no genuine issue exists, the nonmoving party must show the presence of such a fact to stave off summary judgment. *Fort Wayne Community Schools v. Fort Wayne Education Association, Inc.* (1986), Ind.App., 490 N.E.2d 337, 339; *Conrad v. Waugh* (1985), Ind.App., 474 N.E.2d 130, 134. In doing so, the nonmoving party may not merely rest upon his pleadings, but his response must set forth specific facts indicating an issue of material fact exists. *Raymundo v. Hammond Clinic Assoc.* (1983), Ind., 449 N.E.2d 276, 281; *Popp v. Hardy* (1987), Ind.App., 508 N.E.2d 1282, 1284; *Fort Wayne Community Schools, supra,* at 340; Ind.Rules of Procedure, T.R. 56(E). If the nonmovant fails to meet this burden, summary judgment may be granted. *Raymundo, supra,* at 280; *Williams v. Lafayette Production Credit Association* (1987), Ind.App., 508 N.E.2d 579, 582, *reh. denied; Conrad, supra,* at 134; Ind.Rules of Procedure, T.R. 56(E).

When reviewing the grant of a summary judgment motion, we stand in the shoes of the trial court. *Lafary v. Lafary* (1985), Ind.App., 476 N.E.2d 155, 158. All evidence must be construed in favor of the nonmovant and all doubts as to the existence of a material issue must be resolved against the movant. *Raymundo, supra,* at 280; *Penwell v. Southern Life Ins. Co.* (1985), Ind.App., 474 N.E.2d 1042, 1044; *Kahf, supra,* at 729. Even if facts are not in dispute, summary judgment is inappropriate if conflicting inferences arise. *Board of Aviation Commissioners of St. Joseph County v. Hestor* (1985), Ind.App., 473 N.E.2d 151, 153.

Summary judgment is not a substitute for a trial to resolve factual disputes. Though the trial court may believe the nonmovant will be unsuccessful at trial, summary judgment should not be granted where material facts are disputed or conflicting inferences arise. *Grimm v. Borkholder* (1983), Ind.App., 454 N.E.2d 84, 86.

ITT contends it should have prevailed under general priority rules as a secured party who perfected its interest in inventory by filing a financing statement with the Secretary of State. IND.CODE 26-1-9-401, 29-1-9-312(5)(a). In the alternative, ITT argues it has a perfected purchase money security interest under IND.CODE 26-1-9-107(b) and this interest prevails over the Bank's claim it has a perfected purchase money security interest. ITT argues the Bank did not properly perfect its claim of purchase money security interest.

The Bank contends it had a perfected purchase money security interest which takes priority over ITT's security interest in inventory. The Bank argues ITT cannot be treated as a purchase money secured party.

The undisputed facts show one Steve Gresham, doing business as Midway Cycle Sales, entered into a Wholesale Financing Agreement with ITT on October 28, 1983. The agreement was to finance the purchase of new motorcycles from U.S. Suzuki Motor Corporation. ITT filed a financing statement with the Indiana Secretary of State on December 16, 1983. It named "Gresham, Steven d/b/a Midway Cycle Sales, R. 4, Box 383" North Vernon, as the debtor. The financing statement described the collateral upon which ITT asserted a lien as:

All inventory, raw materials, goods in process, finished goods, machines, machinery, furniture, furnishings, fixtures, vehicles, equipment, accounts receivable, book debts, notes, chattel paper, acceptances, rebates, incentive payments, drafts, contracts, contract rights, choses in action, and general intangibles, whether now owned or hereafter acquired, and all attachments, accessions, and additions thereto, substitutions, accessories, and equipment therefor, and replacements and proceeds.

(R. 68).

On January 9, 1984, Union Bank filed a financing statement with the Indiana Secretary of State claiming it was engaged in "Floor Planning of New Motorcycles." "Midway Cycle Sales and Service R.R. # 4 Box 383" North Vernon, was named as the debtor. (R. 168).

Later in January, 1984, ITT conducted a UCC search. It discovered Union Bank's

financing statement. ITT did not then contact Union Bank or take further measures to determine upon which specific motorcycles Union Bank was asserting its lien, although it had no doubt the "Midway Cycle Sales and Service" therein mentioned referred to "Mr. Gresham." (R. 141–142). ITT made this discovery before it paid Suzuki for Gresham's purchase of the motorcycles. (R. 66–67).

In August, 1984, ITT began paying Suzuki invoices for Gresham. On June 19, 1985, ITT sent to Union Bank a "Notification Letter." It stated ITT "expects to acquire purchase money security interests in inventory of the above dealer [Gresham, Steven d/b/a Midway Cycle Sales, R 4, Box 383, North Vernon, IN]," then used the exact language of its earlier financing statement as to "all inventory, raw materials, ... etc."

In May, 1986, Union Bank began lending Gresham money under its "floorplanning" agreement with Gresham. The money it loaned was secured by trust receipts, bills of sale, and promissory notes given in exchange for certificates of origin for each of the motorcycles. In early 1986, Gresham began "double floorplanning[.]" That is, he took certificates of origin for Suzuki motorcycles which had been paid for by ITT to Union Bank. Gresham claimed he had paid for them but later had decided to floor plan them. The Bank loaned Gresham the purchase price for each motorcycle. Gresham used that money to make payments on the motorcycles to ITT. He made no payments using Union Bank's money to anyone other than ITT. (R. 162–163). Gresham's debt to ITT was never paid in full.

Midway Cycle Sales and Service went bankrupt after Union Bank repossessed 22 new Suzuki motorcycles. ITT repossessed 66 motorcycles and credited Gresham's account for them. ITT now seeks to recover from Union Bank the motorcycles the Bank repossessed.

We note in passing, at the time ITT paid Suzuki its security interest attached within the meaning of IND.CODE 26–1–9–204 and was perfected within the meaning of IND. CODE 26–1–9–302.

■ Union Bank claims here and successfully claimed below it had a priority purchase money security interest in the motorcycles. It argues it held a purchase money security interest and is entitled to priority even though ITT's interest attached and was perfected. Union Bank's theory is bottomed upon the provisions of I.C. 26–1–9–312(3) which provides, regarding priorities in case of conflicting liens, as follows:

.    .    .    .    .

(3) A purchase money security interest in inventory collateral has priority over a conflicting security interest in the same collateral if

(a) the purchase money security interest is perfected at the time the debtor receives possession of the collateral; and

(b) any secured party whose security interest is known to the holder of the purchase money security interest or who, prior to the date of the filing made by the holder of the purchase money security interest, had filed a financing statement covering the same items or type of inventory, has received notification of the purchase money security interest before the debtor receives possession of the collateral covered by the purchase money security interest; and

(c) such notification states that the person giving the notice has or expects to acquire a purchase money security interest in inventory of the debtor, describing such inventory by item or type.

IND.CODE 26–1–9–107(b) provides the definition of purchase money security interest relevant to this appeal. It says:

A security interest is a "purchase money security interest" to the extent that it is

.    .    .    .    .

(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

The Bank's own recitation of facts and the record of evidence provided in this case precludes a finding the Bank had a purchase money security interest in these motorcycles. The Bank says, with emphasis and citation to the record:

> Beginning in early 1986, Gresham began double floorplanning. He obtained certificates of origin for motorcycles which had been paid for by ITT and took them to Union Bank claiming he had paid for the motorcycles previously and later decided to floorplan them. (R. 62—Pritchett dep. p. 13, 18). Despite having previously submitted financial statements to Union Bank, Gresham never disclosed his arrangement with ITT to the bank. (R 62—Pritchett dep. p. 27). When Union Bank performed its regular inspections of Gresham's inventory, he always had the motorcycles in stock for which Union Bank held the C. of O's. (R 62—Pritchett Dep. p. 29).
>
> Union Bank loaned Gresham the purchase price for each motorcycle he floorplanned. *Gresham used the money Union Bank lent him to make payments on the motorcycles to ITT.* Gresham made no payments to anyone else with Union Bank's money. (R. 162–163).

(Appellee's Br. 5). In short, it was ITT's money, not the Bank's, which enabled Gresham "to acquire rights in the collateral."

The relevant Uniform Commercial Code section could hardly be more clear about the circumstances in which a nonseller purchase money security interest arises. A nonseller security interest is a purchase money security interest only when one "gives value to enable the debtor to acquire rights in or use of collateral if such value is *in fact* so used." (Our emphasis). IND. CODE 26-1-9-107(b). There is no dispute here. The Bank did not give value to Gresham so he could acquire rights in the collateral. Gresham had already acquired rights in the motorcycles when he obtained money from the Bank. The money obtained from the Bank was not "in fact ... used" to "acquire [the] rights." As noted by official comment to section 9-107 one "must of course have given present consideration" to claim a purchase money security inter-

est. *Cf. North Platte State Bank v. Production Credit Association* (1972), 189 Neb. 44, 200 N.W.2d 1 (a creditor who makes advances to enable the debtor to pay a seller for goods to which the debtor has both possession and title does not have a purchase money security interest within the meaning of [Nebraska's] § 9-107(b); *In re Jones* (Bankr.M.D.N.C.1980) 5 B.R. 655 (creditor who advances additional sums on a security agreement and refinances the loan destroys the purchase money character of the lien because neither the cash advances nor the refinancing enable the debtor to acquire additional rights in the collateral); *In re Brooks* (Bankr.S.D.Me. 1980) 29 U.C.C. Reporting Service 660 (value must be given contemporaneously with the debtor's acquisition of the property); *In re Southern Vermont Supply Co., Inc.* (Bankr.D.VE.1980) 58 B.R. 887 (when a purchase money interest is claimed by a secured party who is not a seller [the party] must of course have ... given present consideration); *DeKalb Bank v. Klotz* (1987), 151 Ill.App.3d 638, 104 Ill.Dec. 596, 502 N.E.2d 1256 (a purchase money security interest exists only where it secures funds advanced for the actual purchase of the collateral). *See also*, White and Summers, *Uniform Commercial Code 2nd Edition* (1980) § 25-5.

The Bank is not a purchase money security lender and was not entitled to summary judgment as one.

■ The next question then is whether ITT was entitled to summary judgment. Appellee Bank asserts the facts are not in dispute. (Appellee's Br. 3). The only facts relevant to a determination of this issue are whether ITT's notice of a security interest was filed before the Bank's notice of a security interest and whether ITT identified motorcycles in possession of Union Bank as part of the inventory securing its debt.

We have heretofore noted the Bank is not a purchase money security lender. Thus, as to the Bank, the standard lien priority provisions at IND.CODE 26-1-9-312(5)(a) apply, not the purchase money

security interest provisions of IND.CODE 26-1-9-312(3). ITT filed first, thus because the Bank did not hold a purchase money security interest, we need not decide as between these two parties whether ITT was a purchase money interest holder. In this case the Bank admitted it had possession of the motorcycles but denied they were subject to ITT's security agreement. ITT's financing statement adequately described the property to be secured. *See, e.g., Citizens National Bank of Evansville v. Wedel* (1986), Ind.App., 489 N.E.2d 1203, 1208.

ITT is entitled to the motorcycles if its proof shows it paid for the motorcycles and ITT's proof does not contradict it. A careful review of ITT's uncontested evidence shows it paid for 20 motorcycles. By affidavit at R. 66-67 Jeff Greene testified ITT paid for 20 of the 22 motorcycles listed in exhibit C attached to the complaint. His affidavit was supported by invoices received from Suzuki. (R. 68B-M). The invoices listed by serial number, price, and other information motorcycles for which Greene says ITT paid. The 20 motorcycles listed in the affidavit are included, with others, on the invoices. Two other motorcycles listed in the complaint are not listed in Greene's affidavit or on the invoices. The Bank's response to Greene's affidavit in evidence does not contest the facts asserted by Greene as to payment for these particular motorcycles. Thus, ITT showed it paid for the 20 motorcycles listed. As to these 20 motorcycles ITT is entitled to summary judgment.

Reversed and remanded for proceedings consistent with this opinion.

RATLIFF, C.J., and MILLER, J., concur.