IN RE: TRAIN COLLISION AT GARY, INDIANA ON JANUARY 18, 1993.

Terry DILLON, et al., Individually and on behalf of All Other Passengers, Spouses of Passengers, Dependent Next of Kin and Personal Representatives of Deceased Passengers Who Are Members of a Class Certified, Appellants–Plaintiffs,

v.

CHICAGO SOUTHSHORE & SOUTH BEND RAILROAD CO., a Partnership, The Northern Indiana Commuter Transportation District, Louis T. Klauder & Associates, Willard Blewett, Nippon Sharyo Seizo Kaisha, Ltd., David Riordan, and Sumitomo Corporation, Appellees–Defendants.

No. 45A05–9511–CV–428.

Court of Appeals of Indiana.

Sept. 11, 1996.

Rehearing Denied Oct. 31, 1996.

Kenneth J. Allen, Brett E. Osborne, Kenneth J. Allen & Associates, P.C., Valparaiso, for appellant.

Michael C. Harris, Harris, Welsh & Lukmann, Chesterton, Robert M. Burke, Brian Fetzer, Johnson & Bell, Ltd., Chicago, IL, Mark E. Odier, Steven G.M. Stein, Eric A. Berg, Stein, Ray & Conway, Chicago, IL, Ronald P. Kuker, Lauren K. Kroeger, Hoeppner, Wagner & Evans, Valparaiso, Joseph R. Fullencamp, Barnes & Thornburg, South Bend, Wayne C. Kreuscher, Barnes & Thornburg, Indianapolis, Daniel A. Gioia, Kelly E. O'Malley, Spangler, Jennings & Dougherty, P.C., Merrillville, Storrs W. Downey, Michael K. Siebenhaar, Landau, Omahana & Kopka, Ltd., Merrillville, for appellees.

## OPINION

RUCKER, Judge.

This is an appeal from the trial court's grant of a 12(B)(6) motion to dismiss. As a result of a tragic passenger train collision a four count class action lawsuit was filed against various persons and entities (referred to collectively as Defendants). Class repre-

sentatives (referred to collectively as Dillon) alleged negligence in Count I, violation of 42 U.S.C. § 1983 in Count II, and products liability and negligence in Counts III and IV. On motion by Defendants the trial court dismissed Counts II, III, and IV. Dillon now appeals contending the trial court erred in so doing. We disagree and therefore affirm.

## Facts

On January 18, 1993 an eastbound passenger train traveling from Chicago, Illinois to South Bend, Indiana and a westbound passenger train traveling from South Bend, Indiana to Chicago, Illinois converged simultaneously toward a single-track bridge near Noble Street and 3rd Avenue in Gary, Indiana. The trains collided on the bridge killing seven passengers and injuring numerous others. Representatives of the estates of those killed in the crash along with 142 persons who were injured filed a four count class action lawsuit. Count I alleged negligence on the part of the Chicago South Shore & South Bend Railroad Company and the Northern Indiana Commuter Transportation District, both of which allegedly owned, operated and maintained the railroad.[1] Count II alleged a cause of action under 42 U.S.C. § 1983 against the two railroad companies along with Gerald Hanas, Northern's general manager and chief executive, and David Riordan and Willard Blewett, the engineers on the two trains. Counts III and IV asserted claims of products liability and negligence based on alleged defects in the design and structure of the train cars. Northern Indiana Commuter Transportation District along with the Sumitomo Corporation of America, Nippon Sharyo Seizo Kasha, Ltd., and Louis T. Klauder & Associates were named as defendants in Counts III and IV.

After Dillon amended his complaint for the fifth time, defendants Northern, Hanas, and

the train engineers (referred to collectively as Northern) filed a motion to strike Count I of the complaint due to alleged procedural defects and because Dillon allegedly requested damages in excess of limitations contained in the Indiana Tort Claims Act (ITCA). Northern also requested dismissal of Count II on grounds that it failed to state a claim upon which relief could be granted. Specifically, Northern contended the complaint failed to allege a constitutional violation but rather merely stated a cause of action in tort. In the alternative Northern contended that the claim was barred by res judicata.[2] As to Counts III and IV Northern asserted that the state law on which the claims were based had been preempted by the Federal Boiler Inspection Act, 45 U.S.C. §§ 22–29, 31–34. The remaining defendants also filed motions to dismiss Counts III and IV on the same grounds as those which Northern asserted.

The trial court conducted a hearing on the motions and thereafter entered an order dismissing Counts II, III, and IV of the complaint against all defendants. The motion to strike Count I was denied. Under provisions of Ind. Trial Rule 54(B) the trial court entered final judgment, and this appeal ensued in due course.

## Discussion

When reviewing a 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted this court accepts as true the facts alleged in the complaint. *Hudgins v. McAtee,* 596 N.E.2d 286, 288 (Ind.Ct.App.1992). Dismissal of a complaint is proper only when it appears that the claimant would not be entitled to recover under any set of facts represented by the pleadings. *Union Fed. Sav. Bank v. Chantilly Farms,* 556 N.E.2d 9, 11 (Ind.Ct.App. 1990).

---

1. Chicago South Shore has been dismissed from this action and therefore is not a party to the appeal.

2. The res judicata argument was based on this court's decision in *In re Train Collision at Gary, Indiana,* 654 N.E.2d 1137 (Ind.Ct.App.1995), *reh'g denied,* in which we affirmed the trial court's dismissal of claims contained in Dillon's Fourth Amended Complaint because the claims requested damages in excess of ITCA limitations.

According to Northern, the request for actual and punitive damages in the § 1983 claim here is merely an attempt to circumvent the ruling in *In re Train Collision* and to reassert the claims contained in the prior complaint. As such, Northern argues, the § 1983 claim is barred by res judicata. Both parties discuss this issue at length in their briefs on appeal. However, because we dispose of the § 1983 claim on other grounds, we need not address this issue.

## I.

Dillon first contends the trial court erred in dismissing Count II which, according to Dillon, alleged a violation of 42 U.S.C. § 1983. Section 1983 provides a civil remedy against any person who, under color of state law, subjects a citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the federal Constitution or federal laws. *Bayh v. Sonnenburg,* 573 N.E.2d 398, 402 (Ind.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415. In order to recover damages under § 1983 a plaintiff must show that: (1) he held a constitutionally-protected right; (2) he was deprived of this right; (3) the defendants acted with reckless indifference to cause this deprivation; and (4) the defendants acted under color of state law. *Patrick v. Jasper County,* 901 F.2d 561, 565 (7th Cir.1990). In support of his § 1983 claim Dillon alleged that Northern: (1) failed to install and equip the trains and track near the trestle with motion sensors or other detection devices which would have warned the motormen sufficiently in advance of an imminent collision, (2) failed to properly maintain, repair, remove or re-design the Penn–Wabash gauntlet bridge despite defendants' knowledge that the trestle and track configuration posed an extreme hazard to the safety of passengers, (3) failed to provide adequate warnings or signalization at the Penn–Wabash gauntlet bridge despite a history of repeated signal failures and complaints made by motormen regarding the signals, (4) failed to formulate and implement a safe operating schedule so that trains would not simultaneously converge from opposite directions toward the gauntlet on a regular basis, (5) failed to formulate and implement proper training and testing of engineers and conductors, (6) failed to install and equip the trains and/or the track near the Penn–Wabash gauntlet bridge with devices which would provide the positive separation of trains and which would automatically stop all eastbound and westbound trains and/or would be fail-safe in the event that eastbound and westbound trains converged simultaneously upon the bridge, (7) failed to timely apply brakes in order to slow the trains prior to the collision and instead quickly accelerated immediately prior to the collision, and (8) failed to operate the railroad for the benefit of the public safety but instead operated and managed the railroad for the personal and pecuniary benefit of Northern management. According to Dillon, Northern's custom and policy of operating the railroad in such a manner was grossly negligent, reckless and deliberately indifferent to Dillon's rights to life, liberty, freedom from bodily harm, personal security and safe travel under the Due Process Clause of the Fourteenth Amendment.

Section 1983 was designed to prevent state actors from violating the constitution and federal statutes and to compensate injured plaintiffs for deprivations of those federal rights. However, the United States Supreme Court has refused to recognize § 1983 liability where the wrong committed by the state actor was traditionally governed by tort law principles. For example, in *Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 126, 112 S.Ct. 1061, 1069, 117 L.Ed.2d 261 (1992), the widow of a sanitation department worker who died of asphyxia after entering a manhole to unstop a sewer line attempted to state a cause of action under § 1983 against the city for her husband's death. She alleged that her husband "had a constitutional right to be free from unreasonable risks of harm to his body, mind and emotions and a constitutional right to be protected from the city of Harker Heights' custom and policy of deliberate indifference toward the safety of its employees." *Id.* at 117, 112 S.Ct. at 1064. She further alleged that the city violated that right "by following a custom and policy of not training its employees about the dangers of working in sewer lines and manholes, not providing safety equipment at job sites and not providing safety warnings." *Id.* The court determined the plaintiff's claim that the city had a constitutional obligation to provide its employees with certain minimal levels of safety and security to be "unprecedented" and "quite different" from claims that the State owes a duty to take care of those who have already been deprived of their liberty. *Id.* at 127, 112 S.Ct. at 1069. Rather, the claim was analogous to a "fairly typical state-law tort claim: The city breached its duty of care to her husband by failing to provide a

safe work environment." *Id.* at 128, 112 S.Ct. at 1070. The Supreme Court therefore affirmed the district court's dismissal of the complaint for failure to state a claim under § 1983.

In like fashion our own supreme court reached a similar conclusion in *Culver–Union Township Ambulance Serv. v. Steindler,* 629 N.E.2d 1231 (Ind.1994). There the plaintiff asserted a § 1983 claim against a township ambulance service in connection with the death of a man treated for a heart attack. The complaint charged that various policies adopted by the defendant constituted a reckless indifference to the decedent's "right to live" as guaranteed by the Fourteenth Amendment. The court observed that the Fourteenth Amendment does not confer a right to live but rather prohibits a state from depriving any person of life, liberty or property without due process of law. *Id.* at 1233. Moreover, "[t]he 14th Amendment generally does not confer any affirmative right to governmental aid. It serves 'as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.'" *Id.* at 1233 quoting *DeShaney v. Winnebago County Dep't of Social Serv.,* 489 U.S. 189, 195–96, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). The court concluded that the complaint alleged no cognizable constitutional violation and consequently affirmed the trial court's dismissal of the § 1983 claim pursuant to Ind. Trial Rule 12(B)(6).

Dillon acknowledges the foregoing authority but contends there are at least three exceptions to the general rule of non-liability under § 1983 which apply to this case: (1) the "in-custody" exception, (2) the "state-restricted alternatives" exception, and (3) the "state-created danger" exception.

■ Although some courts have recognized exceptions to the general rule that the State owes no duty to provide minimum levels of safety and security, the exceptions have been narrowly applied. The "in-custody" exception applies when a person is involuntarily taken into state custody. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to

assume some responsibility for his safety and general well-being." *DeShaney,* 489 U.S. at 199–200, 109 S.Ct. at 1005. "In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause." *Id.* at 200, 109 S.Ct. at 1006. We disagree with Dillon's assertion that the train passengers in this case were in the custody of the State within the meaning of *DeShaney.* To the contrary the passengers here were under no obligation to board the trains and instead did so of their own free will. The "in-custody" exception is not applicable.

■ The "state-restricted alternatives" exception is likewise inapplicable. This exception was recognized in *Archie v. City of Racine,* 847 F.2d 1211 (7th Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989). In that case the court held that a § 1983 action did not lie against a municipality for failing to send an ambulance in response to calls for help. The court noted in dicta that "if the state suppressed private ambulance services, or so flooded the market with subsidized (or free) aid that private rescue services no longer could make a profit and hence disappeared, the state would have a duty to furnish ambulance services." *Id.* at 1223. Seizing on the foregoing language Dillon asserts that Northern flooded the market in this case by monopolizing all commuter train service in Northwest Indiana. Even assuming for the sake of argument that Northern flooded the market with commuter train service, Dillon does not assert and indeed makes no argument that alternative modes of transportation were unavailable. As Northern points out neither bus transport nor transportation by private passenger car was affected by operation of the trains. In any event we do not agree that monopolizing all modes of transportation between two points is analogous to the lack of alternative emergency medical services as occurred in *Archie.*

The "state-created danger" exception finds its roots in an observation made by the court

in *DeShaney*, 489 U.S. 189, 201, 109 S.Ct. 998, 1006, 103 L.Ed.2d 249. There the court ruled that although the State may have been aware of the dangers faced by a minor child returned to his abusive father by social workers, "it played no part in their creation, nor did it do anything to render him any more vulnerable to them." In reliance upon this language, a number of courts have imposed § 1983 liability where the State itself created the danger to the victim.[3] However, the state-created danger exception has not been embraced universally. For example in *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729, 734 (8th Cir.1993) the court found no due process violation where a student who previously had exhibited sexually violent behavior sexually assaulted another student after authorities knowingly placed the attacker into a program with vulnerable children. The court observed:

> We cannot agree with those who have suggested that one comment toward the end of the *DeShaney* opinion—"nor did [the State] do anything to render him any more vulnerable to [the risk of private violence]," [citation omitted]—signals the Supreme Court's approval of § 1983 liability whenever a state actor has increased the risk of harm from private sources. Such a ruling would make § 1983 virtually coterminous with traditional tort law, the very expansion of constitutional tort liability that the Supreme Court has rejected....

*Id.* at 734. We find particularly persuasive the case of *Searles v. Southeastern Pa. Transp. Auth.*, 990 F.2d 789 (3d Cir.1993). In that case the plaintiff on behalf of herself and other persons similarly situated, filed a complaint against the Southeastern Pennsylvania Transportation Authority (SEPTA) for damages for fatal injuries sustained by her husband in the derailment of a railcar operated by SEPTA. The derailment occurred after a motor fell from a railcar and struck a switch causing the front and rear wheels of the car to go onto separate tracks. In her complaint, the plaintiff asserted § 1983 liability based on SEPTA's alleged "policy or custom of following a maintenance inspection and repair program ... which was grossly negligent, in reckless disregard for the safety of the public, and ... continued with deliberate indifference to the rights of others." *Id.* at 790. The complaint further alleged that as a result of SEPTA's acts or omissions the plaintiffs were deprived of "safe and continued enjoyment of life, and liberty without due process of law ..." *Id.*

The court compared the allegations of the complaint with those in *Collins*, 503 U.S. at 117, 112 S.Ct. at 1064 and noted their similarity. Concluding that just as the constitution did not impose a duty upon a government employer to provide its employees with a safe working environment, the *Searles* court determined that the constitution likewise did not impose a duty on SEPTA to provide a safe passenger environment. *Id.* Paraphrasing *Collins*, the court held that the plaintiff's claim in that case was "analogous to a fairly typical state law tort claim: defendants breached their duty of care to her husband by failing to provide safe transportation." *Searles*, 990 F.2d at 793.

 In similar fashion Count II of Dillon's complaint also is analogous to a typical tort claim for negligence. Although 42

---

**3.** In *Cornelius v. Town of Highland Lake*, 880 F.2d 348, 359 (11th Cir.1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990), the court found a duty to protect on behalf of a town clerk who was abducted and terrorized by an inmate with a history of violent crimes after prison officials assigned the inmate to community service work. Similarly, in *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993), prison officials were liable to a nurse employed by the prison after she was raped by a known violent sex offender assigned to work with her at the prison. In *Dwares v. City of New York*, 985 F.2d 94 (2d Cir.1993), the court allowed a § 1983 action against police officers who alleg-

edly conspired with a group of skinheads to permit them to beat up demonstrators. *See also Wood v. Ostrander*, 879 F.2d 583, 590 (9th Cir. 1989), *cert. denied*, 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990) (police had affirmative duty to protect plaintiff after arresting driver of car in which plaintiff was passenger, impounding vehicle, and leaving plaintiff stranded in high-crime area); *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir.1982) ("if the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into the snakepit").

U.S.C § 1983 was designed to compensate injured plaintiffs for deprivation of federal rights by state actors, it was not intended to supplant state tort law by providing a remedy for every wrong. *Culver–Union,* 629 N.E.2d 1231, 1233. A state tort does not become a constitutional violation simply because it is committed by a government actor. *Id.* Dillon may proceed on the negligence claim contained in Count I of his complaint; however the trial court properly dismissed the § 1983 claim contained in Count II. We find no error on this issue.

## II.

Dillon next contends the trial court erred in dismissing Counts III and IV which asserted products liability and negligence based on alleged defects in the design and structure of the train cars. Defendants counter the trial court properly dismissed those counts because Dillon's claims thereunder are preempted by the Federal Boiler Inspection Act (Act), 45 U.S.C. §§ 22–29, 31–34.[4] Dillon first argues the train cars at issue here are not "locomotives" within the meaning of the Act but rather are "passenger train cars" as alleged in the complaint. The argument continues that because this case was resolved pursuant to a motion to dismiss, the allegations of the complaint must be taken as true.

Defendants counter that the train cars in question were established as locomotives by the affidavit of Gerald Hanas which was submitted with defendant Sumitomo's motion to dismiss. According to Defendants the filing of the affidavit converted the motion to dismiss into a motion for summary judgment pursuant to Ind. Trial Rule 12(B)(8). As such, Dillon was required to present T.R. 56 materials demonstrating a genuine issue for trial which he failed to do. Thus, Defendants contend, because Dillon did not present evidence in contradiction to the affidavit, the proposition that the cars are locomotives is undisputed and Defendants are entitled to summary judgment as a matter of law.

When a motion to dismiss is filed pursuant to Ind. Trial Rule 12(B)(6) and matters outside the pleadings are presented to and not excluded by the trial court, the motion shall be treated as one for summary judgment and disposed of as provided in Ind. Trial Rule 56. T.R. 12(B)(8). Once a motion is thus converted, the party opposing the motion has a reasonable opportunity in which to present T.R. 56 materials demonstrating an issue for trial. T.R. 12(B)(8); T.R. 56(C). The adverse party may not rest upon the mere allegations or denials in his pleadings but must set forth specific facts demonstrating a genuine issue for trial. T.R. 56(E); *ITT Commercial Fin. Corp. v. Union Bank & Trust Co.,* 528 N.E.2d 1149 (Ind.Ct.App. 1988). If the adverse party fails to meet this burden, summary judgment may be granted. *Id.*

The record is unclear whether the trial court considered the affidavit of Gerald Hanas and converted the motion to dismiss into one for summary judgment. However, the dispute on appeal concerning locomotives versus passenger train cars was never contested before the trial court. Rather the issue regarding the train cars was first raised in a memorandum in support of the motion to dismiss filed by Northern on March 8, 1995. The memorandum alleged that each of the train cars involved in the collision was "self-propelled, contained propelling motors, and was designed to carry passenger traffic, and therefore, was a 'locomotive' as defined by the Federal Boiler Inspection Act, 45 U.S.C., § 22–29, 31–34." *Record* at 59. On April 11, 1995 and on June 1, 1995, respectively, defendants Klauder and Sumitomo filed similar motions in which they also alleged that the cars were locomotives within the meaning of the act. Further, the memorandum in support of defendant Nippon's motion to dismiss, filed June 13, 1995 and the July 10, 1995 reply brief filed by Northern and Hanas both asserted that the cars were locomotives and that the fact was not in dispute. Indeed, in its response to the

---

4. *The Act provides in relevant part:* "It shall be unlawful for any railroad to use or permit to be used on its line any *locomotive* unless said locomotive, its boiler, tender, and all parts and ap-

purtenances thereof, are in proper condition and safe to operate in the service to which the same are put ..." 45 U.S.C. § 23 (emphasis added).

motions, Dillon did not deny that the cars were locomotives nor did he file any other pleading or present any evidence disputing that fact.[5] We find unpersuasive Dillon's contention on appeal that the complaint's characterization of the cars as "passenger train cars" precludes a finding by the trial court that the cars are locomotives. To the contrary the complaint's characterization is consistent with the definition of locomotives under the Act which defines them as "on-track equipment ... with one or more propelling motors designed to carry freight or passenger traffic or both ..." 49 CFR 229.5(I). Because Dillon did not contest the representation that the train cars were locomotives under the Act, that representation is taken as true for purposes of resolving the motions to dismiss.

■ Dillon also contends that even assuming the train cars at issue here are locomotives within the meaning of the Act the trial court nonetheless erred in dismissing Counts III and IV because there was no federal preemption. First, according to Dillon there is a strong presumption against preemption which cannot be overcome absent a showing that such is the clear and manifest purpose of Congress. Second, Dillon argues that under the "new" preemption analysis applied in *Wilson v. Pleasant,* 660 N.E.2d 327, 334 (Ind.1995) *reh'g denied,* Defendants cannot prevail on a claim of federal preemption unless they demonstrate (1) that it is impossible for a private party to comply with both state and federal requirements or (2) that state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Because neither element was established in this case,

the argument continues, the Defendants' preemption claim must fail.[6]

■ Dillon correctly observes that there is a strong presumption against preemption of state law by federal statute or regulation. *California v. ARC America Corp.,* 490 U.S. 93, 101, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989). The historic police powers of the states are not to be superseded by federal law unless that was the clear and manifest purpose of Congress. *Wilson,* 660 N.E.2d at 329 quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947), *rev'd on other grounds* 331 U.S. 247, 67 S.Ct. 1160, 91 L.Ed. 1468 (1947). Dillon also correctly observes that in *Wilson,* our supreme court set forth two factors it considered in determining whether the plaintiff's state law damages claim was preempted by federal statute. However, the court expressly held that its analysis applied only to a claim of "implied conflict pre-emption" and that no claim of "field pre-emption" had been made in that case. *Id.* at 334, 330 n. 3.

■ Field preemption occurs when federal law so thoroughly occupies a legislative field " 'as to make reasonable the inference that Congress left no room for the States to supplement it.' " *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982) quoting *Rice,* 331 U.S. at 230, 67 S.Ct. at 1152. In *Napier v. Atlantic Coast Line R.R.,* 272 U.S. 605, 611, 47 S.Ct. 207, 209, 71 L.Ed. 432 (1926), the United States Supreme Court held that "the power delegated to the [Interstate Commerce] Commission by the Boiler Inspection Act as amended is a general one. It extends to the design, the con-

---

5. At the hearing on the motions to dismiss Dillon did finally raise the issue of whether the train cars fell within the provisions of the Act. However he did not contend that the cars were not locomotives under the Act. Rather Dillon merely suggested that the filing of Gerald Hanas's affidavit created an issue of fact which precluded entry of an order of dismissal. Dillon offered no evidence in contradiction of the affidavit and did not request additional time in which to present such evidence.

6. Dillon also claims that because the Act was repealed in 1994, shortly after the accident in this case, there is no sound policy reason for

applying a preemption analysis based on the statute. However, as Northern points out the Act was not repealed but was simply recodified into 49 U.S.C. as part of Congress's recodification of all "laws related to transportation in one comprehensive title ..." H.R.Rep. No. 180, 103d Cong., 1st Sess. 3 (1993), *reprinted in* 1994 U.S.C.C.A.N. 818, 820. Furthermore, the Act as originally enacted remains in effect as to "rights and duties that matured, penalties that were incurred, and proceedings that were begun" before the recodification. P.L. 103–272, Sec. 7(b), 108 Stat. 1379.

struction and the material of every part of the locomotive and [its] tender and all of its appurtenances." The court rejected the argument that a state's laws could remain in effect because the federal authorities failed to regulate use of the specific safety equipment mandated by the state's laws:

> The fact that the Commission has not seen fit to exercise its authority to the full extent conferred, has no bearing upon the construction of the act delegating the power. We hold that *state legislation is precluded, because the Boiler Inspection Act, as we construe it, was intended to occupy the field.* The broad scope of the authority conferred upon the Commission leads to that conclusion. *Because the standard set by the Commission must prevail, requirements by the states are precluded,* however commendable or however different their purpose.

*Napier,* 272 U.S. at 613, 47 S.Ct. at 210 (emphasis added).

■ It is clear that the Act's preemptive effect extends to common law tort actions. As the Supreme Court observed in *Cipollone v. Liggett Group,* 505 U.S. 504, 521, 112 S.Ct. 2608, 2620, 120 L.Ed.2d 407 (1992), "state regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *Id.* quoting *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775. Thus in *Marshall v. Burlington Northern, Inc.,* 720 F.2d 1149 (9th Cir.1983) the Ninth Circuit held that a common law negligence action relating to use of strobe or oscillating headlights on locomotives was preempted by the Act. Also, in *Springston v. Consol. Rail Corp.,* 863 F.Supp. 535, 541 (N.D.Ohio 1994) the plaintiff's state law negligence and product liability claims relating to reflective materials, oscillating, strobe and ditch lights on locomotives were likewise barred. *See also Eldridge v. Missouri Pac. R.R.,* 832 F.Supp. 328, 330 (E.D.Okla.1993) (civil action arising out of train/car collision alleging inadequacy of locomotive warning devices preempted by the Act).

In like fashion, here Dillon's claims regarding alleged defects in the design and structure of the train cars are preempted by the provisions of the Act. The trial court's dismissal of Counts III and IV of the complaint was appropriate.

Judgment affirmed.

SHARPNACK, C.J., and BARTEAU, J., concur.