THE FIRST NATIONAL BANK OF VANDALIA, Plaintiff-Appellee, v. TRAIL RIDGE FARM, INC., *et al.*, Defendants-Appellants.

Fifth District   No. 5—83—0349

Opinion filed May 8, 1986.

Patrick M. Flynn, of Jennings, Flynn & Guymon, of Belleville, for appellants Richard McGovern, Lucille McGovern, E. Andrew Orlet, Eileen Orlet, Donald Bergman, William Kamm, and First National Bank of Belleville.

R. Edward Veltman, Jr., of Crain, Cooksey, Veltman & Purcell, Ltd., of Centralia, for appellee.

No brief filed for Max Grinnell.

PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

Defendants, Richard and Lucille McGovern, E. Andrew and Eileen Orlet, Donald Bergman, William Kamm (hereinafter referred to as the investors) and the First National Bank of Belleville, have perfected this appeal from an order of the circuit court of Fayette County which approved the final receivership accounting of defendant, Trail Ridge Farm, Inc., and discharged the receivers and their surety. The facts are as follows:

In 1976, Trail Ridge Farm, Inc., was established for the purpose of operating a dairy farm. In order to finance farm operations, the corporate principals executed a real estate mortgage and security agreement with plaintiff, The First National Bank of Vandalia, and obtained a $180,000 loan. The security agreement provided that $80,000 of this loan would be secured by various articles of personal property "now owned or hereinafter acquired" by Trail Ridge Farm. Included in these items were "All Holstein Dairy Cattle, now owned or hereinafter acquired, and the proceeds therefrom, all to be used in the dairy operation of Trail Ridge Farm, Inc." Pursuant to the Uniform Commercial Code, the plaintiff sought to perfect its security interest in the personal property by filing three financing statements: two in June 1976 and one in August 1976. (Ill. Rev. Stat. 1975, ch. 26, par. 9—401 *et seq.*) These financing statements included the items of personal property listed in the security agreement. Plaintiff filed no continuation statements to keep its security interest perfected as required by the Uniform Commercial Code. Ill. Rev. Stat. 1981, ch. 26, par. 9—403(3).

On September 1, 1977, the investors purchased all of the cows then owned by Trail Ridge Farm; and the investors apparently claim no priority rights in these cows. Trail Ridge Farm subsequently pur-

chased other cows for the investors. These purchases were financed by the First National Bank of Belleville. In exchange for this financing, the investors signed a security agreement which gave the First National Bank of Belleville a security interest in the subsequently purchased cows. It is conceded by the parties that the First National Bank of Belleville perfected a security interest in these cows which did not lapse. Ill. Rev. Stat. 1977, ch. 26, par. 9—401 *et seq.*

In order to finance the investors' purchases, a special escrow account was established at the First National Bank of Belleville. When the manager of Trail Ridge Farm found suitable cows to purchase for the investors, he would contact the First National Bank of Belleville. If the bank consented to the purchase, Trail Ridge Farm would buy the cow(s), ask the person who sold the cow(s) to hold the check issued by Trail Ridge Farm, and notify the First National Bank of Belleville of the purchase. The First National Bank of Belleville would then supply the money and the purchase would be consummated.

After purchasing the cows from Trail Ridge Farm, the investors leased the cows to Trail Ridge Farm pursuant to the terms of a breeding-herd–management agreement. This agreement provided in pertinent part that Trail Ridge Farm was to pay the investors not less than $600 per 12-month period as milk income for each cow purchased by the investors.

Subsequently, Trail Ridge Farm was unable to meet its financial obligations. On February 13, 1980, plaintiff filed an action seeking to "foreclose" all its security interests in real and personal property held against Trail Ridge Farm. The cows the investors had bought from Trail Ridge Farm were included in the collateral in which plaintiff sought to enforce a security interest. The defendants were subsequently joined in the action.

On April 25, 1980, plaintiff filed a motion requesting that a receiver be appointed for Trail Ridge Farm. On May 20, 1980, the investors and the First National Bank of Belleville filed an answer and a counterclaim seeking an accounting of the milk income due to the investors. The investors also sought the appointment of a receiver for the cows bought with the investors' money.

On June 3, 1980, a hearing was held on the appointment of a receiver. At this hearing it was established that Trail Ridge Farm had not made a payment on its indebtedness to plaintiff for 2½ years and had not paid milk income to the investors since April 1979. According to Alex Armstrong, the manager of Trail Ridge Farm, the milk income from the cows was insufficient to pay both farm expenses and the payments due the investors under the breeding-herd–management agree-

ment.

Randy Ostrum, the investors' nominee for receiver of the cows, testified that he was experienced in the operation of dairy farms and that he would be willing to undertake the responsibility of the cows in accordance with the breeding-herd–management agreement. Plaintiff tendered Alex Armstrong, Harold Hartwick, the president of plaintiff bank, and William Wells as its nominees for receiver. Mr. Wells was appointed receiver on June 5, 1980.

After the receiver's first accounting was filed, the investors and the First National Bank of Belleville filed an objection to the accounting (as they did with each subsequent accounting) and a motion seeking the release of cows in which only the investors had asserted an interest. This motion as to the release of the investors' cows was subsequently granted.

On August 29, 1980, the circuit court entered judgment in favor of plaintiff against Trail Ridge Farm and ordered that all secured assets except the cows be sold to satisfy the judgment. These assets were sold at a judicial sale conducted on December 19, 1980. The plaintiff bank bought all of these assets, with the exception of a $50 plow, for $201,152. On October 1, 1980, the receiver filed its second accounting to which the investors and the First National Bank of Belleville objected. Upon subsequently discovering that receiver William Wells was a shareholder in plaintiff bank, the investors and the First National Bank of Belleville moved to have Mr. Wells removed as receiver. This motion was granted on November 3, 1980. At plaintiff's request, Max Grinnel was appointed receiver. This receivership continued through the termination of the instant litigation in the circuit court.

On January 14, 1981, Trail Ridge Farm filed a voluntary petition under chapter eleven of the Bankruptcy Code (11 U.S.C.A. sec. 1101 *et seq.* (1979).) On January 15, 1981, the circuit court entered orders approving the sheriff's report of sale and granting the receiver's motion to enter into a lease and purchase agreement with plaintiff. On December 7, 1981, following the dismissal of the bankruptcy proceeding, the investors and the First National Bank of Belleville filed a motion to set aside the orders entered on January 15, 1981. This motion was denied.

On March 22, 1982, a hearing was held on plaintiff's complaint and the counterclaim of the investors for an accounting of the milk income and other monies due them. On July 30, 1982, the circuit court ruled in favor of plaintiff on its complaint. It ordered all the cows sold and ordered that plaintiff had priority to the entire proceeds of the sale. On September 27, 1982, the circuit court entered judgment against Trail Ridge Farm in favor of the investors for the milk income and other

monies which had not been paid.

On October 22, 1982, all the cows in the possession of Trail Ridge Farm were sold pursuant to court order. After a hearing was held on all pending accountings, objections, and petitions, the circuit court entered an order on April 15, 1983, which: (1) denied all of the objections set forth by the investors and the First National Bank of Belleville, (2) approved all of the receiver's accountings, and (3) directed the payment of the sale proceeds. Since the expenses of the receivership relating to the cows exceeded the proceeds from the sale, none of the parties received any money. All of the parties were ordered to share the expenses of the receivership which had not been met by the sale of the cows.

On appeal, the investors and the First National Bank of Belleville contend that the circuit court erred: (1) in finding that plaintiff, through Trail Ridge Farm, obtained a security interest in those cows which it purchased with the investors' money, (2) alternatively, in finding that plaintiff's alleged security interest in such cows had priority over the interests possessed by the investors and the First National Bank of Belleville, and (3) in approving the accounts, reports, and fees of the receivers and allowing the discharge of the receivers and their surety.

On appeal, plaintiff urges that the question of entitlement to the cattle was moot for the reason that the sale price of the cows was not sufficient to pay the costs of sale and the expenses of the receiver.

■ A moot question is one that has existed but which, because of the happening of certain events, has ceased to exist and no longer presents an actual controversy over rights or interests of a party. (*Jerry Russell Bliss, Inc. v. Pollution Control Board* (1985), 138 Ill. App. 3d 699, 704, 485 N.E.2d 1154, 1158.) Although all of the proceeds from the sale of the cows went toward the expenses of the receivership and none were paid to any of the parties, it is not certain that legal actions arising out of the instant facts may not be brought in the future. Thus, this case presents an actual controversy which must be reviewed. 138 Ill. App. 3d 699, 704-05, 485 N.E.2d 1154, 1158.

Section 9—203 of the Uniform Commercial Code provides in pertinent part:

"(1) *** [A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless

(a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and

in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and

 (b) value has been given; and

 (c) the debtor has rights in the collateral.

(2) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) have taken place unless explicit agreement postpones the time of attaching." (Ill. Rev. Stat. 1981, ch. 26, par. 9—203.)

In the instant case the debtor, Trail Ridge Farm, entered into a security agreement with plaintiff which included the subject cows. Plaintiff perfected this security interest by filing a financing statement. (Ill. Rev. Stat. 1975, ch. 26, par. 9—401 *et seq.*) In exchange for this security interest, plaintiff loaned Trail Ridge Farm a substantial sum of money. Thus, the issue presented by the instant appeal is whether Trail Ridge Farm obtained an interest in the cows which it later acquired and sold to the investors which would subject such cows to the lien of plaintiff's security agreement.

■ We note that each of the sales transactions entered into between Trail Ridge Farm and the investors designates Trail Ridge Farm as the "seller" of cattle and the investors as "buyer." Since Trail Ridge Farm was the "seller," the defendants all recognized that Trail Ridge Farm acquired an interest in the cows it conveyed to the investors. We therefore conclude the Trail Ridge Farm obtained a proprietary interest in such cows and may be said to have had "rights" in such cattle as defined by section 9—203(1)(c); consequently, plaintiff's security interest in the cows became enforceable and attached pursuant to section 9—203(2).

The facts necessary for addressing the priority issue are as follows: In June and August 1976, plaintiff filed financing statements containing valid after-acquired–property clauses which included the subject cows. Subsequently, the investors bought Holstein dairy cattle from Trail Ridge Farm with money which the First National Bank of Belleville loaned them for this purpose. This money was specifically allocated to the purchase of specific cows through the escrow arrangement. In exchange for the loans, the investors signed security agreements which gave the First National Bank of Belleville security interests in these cows. A stipulation submitted into evidence establishes that the First National Bank of Belleville perfected each security interest within ten days of each purchase. The cows bought by the investors remained in the custody of Trail Ridge Farm pursuant to a

leasing agreement.

■■ The Uniform Commercial Code provides in pertinent part:

"A security interest is a 'purchase money security interest' to the extent that it is

(a) taken or retained by the seller of the collateral to secure all or part of its price; or

(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used." (Ill. Rev. Stat. 1977, ch. 26, par. 9—107.)

Further, section 9—312 of the Uniform Commercial Code provides in pertinent part:

"A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 10 days thereafter." (Ill. Rev. Stat. 1977, ch. 26, par. 9—312(4).)

In the instant case the First National Bank of Belleville loaned money to the investors to enable the investors to purchase Holstein dairy cattle from Trail Ridge Farm. Since the money loaned to the investors was used solely and exclusively to finance these purchases, the First National Bank of Belleville acquired purchase-money security interests in these cows. Since the First National Bank of Belleville perfected each security interest within ten days of each purchase, and since possession by Trail Ridge Farm may be equated to possession by the investors (cf. Ill. Ann. Stat. ch. 26, par. 9—305, Uniform Commercial Code Comment, at 179 (Smith-Hurd 1974)), the security interest of the First National Bank of Belleville must take priority over the security interest of the plaintiff, which was based upon an after-acquired-property provision. (See Ill. Ann. Stat. ch. 26, par. 9—107, Illinois Code Comment, at 74 (Smith-Hurd 1974)). Thus, the judgment of the circuit court ordering the receiver to pay monies obtained from the sale of all cows to plaintiff before paying monies to the First National Bank of Belleville must be reversed.

■■ The third contention raised by defendants is that the trial court erred in approving the accounts and reports of the receivers, in paying the receivers' fees, and in discharging the receivers and their surety. Specifically, defendants allege that: (1) the receivers violated the rights of the investors by not paying them milk income from the cows pursuant to the breeding-herd–management agreement, (2) the receivers should receive no compensation and no reimbursement for

expenses incurred during the receivership because they conducted the business of Trail Ridge Farms at a loss, and (3) the plaintiff should bear any loss incurred by the receivership because the plaintiff's rights were accorded preferential treatment by the receivers.

A receiver is an officer of the court who must obey the orders of the court so long as they are unimpeached. As such officer, he has no discretion or personal control over the property in his hands. Obedience to the orders of the court in his management of property under his control is his sufficient protection. This is true even if the order of the court is erroneous and subsequently reversed. *PSL Realty Co. v. Granite Investment Co.* (1979), 76 Ill. App. 3d 978, 994, 395 N.E.2d 641, 653-54; *Reardon v. Youngquist* (1914), 189 Ill. App. 3, 12-13.

At the hearing for the appointment of a receiver, the manager of Trail Ridge Farm testified that the investors had not been paid any milk income since April 1979 because the milk income from the cows was insufficient to pay both farm expenses and the payments due the investors under the breeding-herd-management agreement. It was also established that Trail Ridge Farm had not made a payment to the plaintiff for a 2½-year period prior to the receivership. Since Trail Ridge Farm was unable to meet expenses before the receivership even without paying monies owed to plaintiff, it would be unreasonable to assume that a receiver could make the dairy operations profitable from the investors' point of view. Moreover, even if there was money left over after the sale of the cows and that money was erroneously paid to plaintiff, defendants would have no right of action against the receivers for this act because the court directed the receivers to give plaintiff's rights priority over the defendants' rights.

■ After examining the record, we conclude that the trial court's approval of the receivers' accounts, reports, and fees, and the discharge of the receivers and their surety was not a clear abuse of discretion. See *Plote, Inc. v. Minnesota Alden Corp.* (1981), 95 Ill. App. 3d 5, 7, 419 N.E.2d 492, 494.

For the foregoing reasons, the judgment of the circuit court of Fayette County approving the receivers' accounts, reports, and fees is affirmed. That portion of the judgment which gave priority in the cows purchased with the investors' funds to the plaintiff is reversed, with priority in such cows being given to defendants.

Affirmed in part and reversed in part.

KARNS and HARRISON, JJ., concur.