# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***In re Receivership of Grnacek*, 2012 IL App (3d) 110181**

---

| | |
|---|---|
| Appellate Court Caption | *In re* Receivership of KENNETH A. GRNACEK (Daniel H. Kallan, Plaintiff-Appellee, v. Jerome Larkin, Administrator of the Attorney Registration and Disciplinary Commission, Defendant-Appellant). |
| District & No. | Third District<br>Docket No. 3-11-0181 |
| Filed | January 5, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's order requiring the Attorney Registration and Disciplinary Commission to pay the attorney appointed pursuant to Supreme Court Rule 776 to act as the receiver of a disabled attorney for the legal services rendered to the disabled attorney's clients was reversed on appeal, even though the appointed receiver was motivated by the desire to help a friend and to protect the legal profession and he provided an "extraordinary effort," since Rule 776 does not authorize the trial court to order reimbursement to a receiver for legal services on behalf of the clients of an attorney whose practice is in receivership and the receiver is not regarded as having an attorney-client relationship with the clients and normally serves without compensation. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 10-MR-759; the Hon. Gerald R. Kinney, Judge, presiding. |
| Judgment | Reversed. |

Counsel on Appeal

James A. Doppke, Jr., and Susan Frederick Rhodes (argued), both of Chicago, for appellant.

Daniel J. Kallan (argued), of Daniel J. Kallan Ltd., of Joliet, for appellee.

Panel

PRESIDING JUSTICE SCHMIDT delivered the judgment of the court, with opinion.

Justices Carter and Lytton concurred in the judgment and opinion.

**OPINION**

¶ 1 Jerome Larkin, Administrator of the Attorney Registration and Disciplinary Commission (ARDC), appeals the trial court's order requiring the ARDC to pay attorney Daniel Kallan $33,750 for legal services rendered to the clients of Kenneth A. Grnacek. Kallan concedes that representing Grnacek's clients was not one of his enumerated duties as a receiver under Supreme Court Rule 776 (eff. Mar. 25, 1991). We hold that Rule 776 does not authorize a trial court to order reimbursement to a receiver for legal services provided to the clients of an attorney whose practice is in receivership. We reverse.

¶ 2                                    FACTS

¶ 3 As of 2009, attorney Kenneth A. Grnacek had practiced law in Will County for approximately 35 years. Grnacek's law practice was primarily concentrated in representing defendants in recidivist driving under the influence cases before the circuit courts and statutory summary driver's license suspension cases before the Secretary of State. Grnacek generally obtained a flat fee for his legal services upon retention.

¶ 4 Grnacek began to experience physical and mental health problems four to five years prior to 2009, including a mental and physical breakdown, fatigue, a collapsed lung and the inability to swallow. During 2008 and 2009, attorneys Kevin Cummings and Kallan covered court cases for Grnacek when his health did not allow him to appear for scheduled hearings. Kallan and Grnacek were friends; Kallan had been Grnacek's law partner from 1988 to 1996. Cummings had been a friend of Grnacek since 1989.

¶ 5 Both Cummings and Kallan appeared on behalf of Grnacek and requested continuances in his scheduled matters. Trial judges were becoming impatient due to the lack of progress being made in Grnacek's cases, many of which had been pending for several years. Grnacek's clients expressed their frustration to Cummings and Kallan when they appeared for court hearings, only to learn that there would be a continuance due to Grnacek's unavailability. Something had to give.

-2-

¶ 6        On or about April 22, 2009, Grnacek was admitted to Loyola Medical Center. He remained in the hospital for approximately one month. On or before May 1, 2009, attorney Ira Goldstein filed a petition in the Will County circuit court to bring Grnacek's medical disability to the court's attention. On May 1, 2009, Kallan volunteered to serve as a receiver for Grnacek's law practice.

¶ 7        The same day, the chief judge of the circuit court of the Twelfth Judicial Circuit entered Administrative Order No. 09-16 for the appointment of a receiver on behalf of Grnacek. The order stated that it had been brought to the court's attention that Grnacek was unable to properly discharge his responsibilities to his clients due to a disability and that there were no partners, associates, executors or other responsible parties capable of conducting Grnacek's affairs. The court appointed Kallan as receiver "to take custody of and make an inventory of the files of the said Kenneth A. Grnacek, notify the lawyer's clients in all pending cases as to his disability and take appropriate steps to sequester client funds of the said Kenneth Grnacek, as well as to take whatever other action that may be necessary to protect the interest of said attorney, his clients or other affected parties."

¶ 8        Grnacek appointed Kallan as his power of attorney from May 1, 2009, to May 1, 2010. Kallan assisted Grnacek with financial matters and applying for Social Security disability due to Grnacek's medical condition. Kallan told the court, at the September 2, 2010, hearing on his petition for attorney fees, that Grnacek was "not able to ever practice law again" as a result of his medical condition.

¶ 9        Kallan's appointment as receiver for Grnacek's law practice was in effect from May 1, 2009, until Kallan filed a final report and petition for attorney fees on July 30, 2010. Kallan testified at the hearing on his petition for attorney fees that he volunteered to serve as receiver out of friendship for Grnacek. Kallan was familiar with Grnacek's law practice of defending clients on alcohol-related driving offenses, as Kallan also handles such matters as part of his law practice.

¶ 10        Due to Grnacek's illness, Kallan was not able to communicate with him to obtain assistance in performing his duties as a receiver. However, Grnacek's secretary was helpful to Kallan. She boxed up all of Grnacek's files and put them in alphabetical order in preparation for storage. Grnacek's office remained open for approximately one month. Kallan gave the keys to the landlord around Memorial Day.

¶ 11        Kallan made an inventory of Grnacek's open files and notified Grnacek's clients of his disability. On May 8, 2009, he sent notices to 65 clients regarding Grnacek's disability.

¶ 12        There were approximately nine statutory summary suspension matters pending before the Secretary of State, which Kallan was able to refer to other attorneys. Kallan did not know the fee arrangement those attorneys made with Grnacek's clients. He was able to find substitute counsel for a criminal battery case. In one client matter, involving a pending felony driving under the influence of intoxicants, the client retained co-counsel to assist Kallan in the representation. Kallan filed his appearance as substitute counsel in 31 of Grnacek's remaining open files, which consisted mostly of cases of driving under the influence of intoxicants.

¶ 13        Kallan did not seek additional attorney fees from any of Grnacek's clients. He testified

that he knew that these clients had already paid Grnacek. The fees had been spent prior to Grnacek's completion of the cases; he took on their representation with the intention of finishing up the cases for Grnacek so that his clients did not have to hire and pay substitute counsel. Kallan stated in the affidavit he filed with his motion to supplement the record that Grnacek's clients would have had to obtain substitute counsel at their expense had he not represented them.

¶ 14     Two of Grnacek's cases were pending in the appellate court and Kallan prepared reply briefs and presented oral argument in those matters. Kallan received a total $4,450 from those two clients for attorney fees owed to Grnacek for work Grnacek had previously done on the appeals. Kallan gave one-half of the collected fees to Grnacek and he kept the other half for himself. The propriety of this action is not before this court.

¶ 15     Kallan testified that he decided to take over the representation of Grnacek's clients himself as it was easier than trying to find other attorneys to take the cases. Both Kallan and Cummings indicated that Grnacek had lost the good will of the bench and that most attorneys did not want to take over Grnacek's cases because trial dates had already been continued numerous times on Grnacek's motions.

¶ 16     There was approximately $8,000 in Grnacek's client trust account at the time that Kallan was appointed as receiver. In addition, there was approximately $2,000 in Grnacek's operating account. Kallan used a portion of the funds to pay expenses, including the salary of Grnacek's secretary for one month and "short money" for Grnacek's landlord.

¶ 17     Kallan stated that there were no funds available to provide a refund to Grnacek's clients for the attorney fees they had paid to Grnacek at the beginning of the representation; Grnacek had performed much of the legal services for his clients at the time of the receivership. One client who was being represented by Grnacek on a case of driving under the influence of intoxicants requested a refund of his retainer and filed a complaint against Grnacek with the ARDC; Kallan returned $4,000 to the client from funds in Grnacek's client trust account. Kallan paid out the remaining $4,000 in the account "to pay a property damage accident to an insurance company" on behalf of a client.

¶ 18     On July 30, 2010, Kallan filed a final report with regard to the Grnacek receivership. Kallan reported that all of Grnacek's court files were closed, except for one pending matter in which the client was scheduled for sentencing in August 2010. Kallan concluded that there was no further need for the receivership. On the same day Kallan also filed a petition for attorney fees. He sought attorney fees for the legal services he provided to some of Grnacek's clients, including the two appellate cases, four or five driving under the influence trials, approximately four bench trials, and a number of ancillary matters. He stated in the petition that he had been able to find volunteer substitute counsel for many of Grnacek's pending cases, but he had substituted as counsel in the remaining open cases for which no other volunteer attorneys were immediately available. He presented in his petition that this receivership was extraordinary and did cause substantial hardship. He sought $47,612.50 for 208.25 hours at $250 an hour, which he stated was the customary fee for an experienced attorney to represent clients in traffic and criminal cases in Will County.

¶ 19     Pursuant to Supreme Court Rule 776(e)(2), Kallan served notice of his petition for

attorney fees and final report on the ARDC. On August 13, 2010, the Administrator filed an objection to the petition for attorney fees arguing that Supreme Court Rule 776 does not contemplate that an attorney appointed as a receiver shall take over the representation of the clients of the disabled lawyer and receive compensation for such representation. The Administrator argued that, under Rule 776(d), the attorney appointed as the receiver shall not "be regarded as having an attorney-client relationship with the clients of the disabled, absent or deceased lawyer." Ill. S. Ct. R. 776(d)(1) (eff. Mar. 25, 1991). In addition, the Administrator argued that Rule 776(e) provides that the attorney appointed as the receiver shall normally serve without compensation. The Administrator acknowledged that, under Rule 776(e), the circuit court has the discretion to award compensation to a receiver to be paid from the Disciplinary Fund administered by the ARDC, but only if the nature of the receivership was extraordinary and the failure to award compensation would work a substantial hardship on the receiver. If those two criteria are met, compensation may be awarded only to the extent that the efforts of the receiver "have exceeded those normally required in an amount to be determined by the court." Ill. S. Ct. R. 776(e)(2) (eff. Mar. 25, 1991).

¶ 20      The Administrator went on to argue that Kallan had failed to meet the criteria for an award of compensation under Supreme Court Rule 776. The Administrator argued that Kallan did not present any suggestion of an extraordinary nature of the necessary work in Grnacek's receivership, such as a large client base or a particularly disorganized law practice. In addition, the Administrator pointed out that Kallan did not seek attorney fees for his work as the receiver, but only for his fees in representing Grnacek's clients in their pending legal matters. The Administrator argued that there is no authorization in Supreme Court Rule 776 for compensation to a receiver for providing legal services to the clients of the lawyer who is the subject of the receivership.

¶ 21      Attached to the Administrator's objection to the petition for attorney fees was a copy of an article that had been published in the August 2004 Illinois Bar Journal, entitled, *Serving as Court-Appointed Receiver for a Missing Lawyer: A Step-by-Step Guide*, by John Cesario, an attorney with the ARDC. The Administrator asked the circuit court to consider the "Receiver's Checklist," at pages 6 and 7 of the article, which described the efforts normally required of a receiver, such as taking inventory of the disabled lawyer's client files, notifying the clients of their lawyer's disability, assisting the client in finding other legal counsel and petitioning the court for permission to disburse funds in the disabled or deceased lawyer's client trust account.

¶ 22      Finally, the Administrator objected to Kallan's petition for attorney fees on public policy grounds. The Administrator argued that the purpose of the Disciplinary Fund is to defray the costs and expenses of functions performed by the ARDC. The Administrator pointed to the language of Rule 776(e) that enunciates the public policy of limiting the award of compensation to receivers from the Disciplinary Fund only to the extent that the efforts of the receiver exceed those normally required of a receiver. The Administrator concluded that Kallan's request for an award of attorney fees, incurred in his performance of legal services outside the scope of his appointment as a receiver, should be denied.

¶ 23      A hearing was held on Kallan's petition for attorney fees on September 2, 2010.

Attorneys Cummings and Kallan testified regarding Grnacek's disability and their efforts in assisting him and his clients prior to and after Kallan's appointment as receiver.

¶ 24 Kallan testified that, although he calculated his attorney fees at $250 per hour, he did not expect the court to allow his fees at that rate. Kallan further testified that he realized that "there is a pro bono factor and, well, there should be, because I did volunteer to do this out of friendship for Mr. Grnacek." Kallan stated that he took on the representation of Grnacek's clients to make sure that the client matters were taken care of and so that the courts and the legal profession did not "look bad." Kallan told the court that he was "not looking for a lot of compensation, but I think I should be compensated somewhat." Kallan believed that the circumstances of the receivership were extraordinary, in that Grnacek had no family or partners to "take over these duties that needed to be done to protect his reputation, the bar's reputation and the profession's reputation."

¶ 25 On November 29, 2010, the court filed a written decision on Kallan's petition for attorney fees. The court found that the efforts taken by Kallan were extraordinary: Kallan resolved pending cases within the circuit court system, protected the rights of Grnacek's clients, protected Grnacek from possible disciplinary action, "and otherwise fulfilled the spirit and letter of Supreme Court Rule 776." The court concluded that Kallan's conduct of criminal trials on behalf of Grnacek's clients constituted extraordinary efforts that should be compensated. The court set the rate of compensation at $250 per hour and fixed the number of hours to be compensated at 135 hours. The court ordered the ARDC to pay Kallan $33,750 from the Disciplinary Fund.

¶ 26 On December 27, 2010, the Administrator filed a motion for reconsideration, arguing that an award of attorney fees to the receiver for representing the clients of a disabled lawyer was inconsistent with the express terms of Supreme Court Rule 776. The Administrator argued that the court's order would set a precedent for attorneys appointed as receivers under Rule 776 to seek compensation for nonreceivership services, which would result in the depletion of the Disciplinary Fund for purposes not envisioned by the supreme court. The Administrator expressed his concern that receiverships may become more common in the future, given the need for support and assistance to the greater percentage of aging lawyers in the coming years.

¶ 27 On January 6, 2011, Kallan filed a motion to supplement the record with his affidavit. The affidavit provided additional information regarding the accounts of Grnacek at the time that Kallan was appointed receiver. Kallan also averred that Grnacek charged his clients a fixed fee for representation in aggravated traffic cases, and that Grnacek's "fee was paid up front and was considered non refundable." Kallan stated in his affidavit that he found no funds available to refund Grnacek's clients, that Grnacek had performed much of the legal work required by the clients' legal matters at the time of the receivership and that those clients would have had to obtain substitute counsel at their expense.

¶ 28 On January 6, 2011, Kallan also filed a response to the Administrator's motion for reconsideration. Kallan argued that the language of Rule 776 was clear and unambiguous and authorizes a receiver "to take whatever other action is indicated to protect the interests of the lawyer, his clients, or other affected parties." He further argued that there is no language in

Rule 776 that prohibits a receiver from providing legal services to the disabled lawyer's clients. Kallan cited to other types of receiverships, such as for the management of real property during a legal dispute and for a dissolved corporation, in which the receiver is compensated for services rendered, in an amount determined within the discretion of the court. Kallan believed that the proper issue presented in the Administrator's motion for reconsideration was whether the circuit court abused its discretion by finding that the services he rendered as receiver were extraordinary and, thus, subject to compensation. He argued that the evidence supported a finding that his legal representation of Grnacek's clients was necessary for the protection of both Grnacek and his clients. We note there was no evidence that the clients Kallan represented were unable to pay for substitute counsel. Most of the cases Kallan took on were for jailable offenses and, therefore, indigent defendant's could have requested a public defender. Likewise, there was no evidence that Grnacek was without the means to refund any unearned fees from his personal assets.

¶ 29    On January 13, 2011, a hearing was held on the Administrator's motion for reconsideration. The Administrator argued that the language of Rule 776 indicated the intention of the supreme court to limit compensation from the Disciplinary Fund to receivers and to limit the duties of a receiver appointed under the rule. The Administrator acknowledged that Rule 776 does not prohibit a receiver from subsequently entering into an attorney-client relationship with the clients of the disabled lawyer for whom the receivership was established, but he argued that such a relationship requires an independent fee agreement between the attorney-receiver and the former client of the disabled lawyer with regard to the scope of the representation unrelated to the receivership. The Administrator argued that the circumstances under which Kallan was appointed as a receiver for Grnacek's law practice, where Grnacek was a sole practitioner with no one available to conduct the affairs of his practice, are essentially present in almost every receivership.

¶ 30    In commenting on the Administrator's argument, the circuit court indicated that Kallan's efforts on behalf of Grnacek's clients potentially had the result of reducing the number of client complaints filed with the ARDC against Grnacek and, therefore, saved the ARDC "some time and trouble on that." The court stated that one could view Kallan's efforts in that regard to be extraordinary as contemplated by Rule 776. Counsel for the Administrator informed the court that the ARDC is able to handle such a situation, by conducting investigations into any complaints received about Grnacek's failure to complete the representation of his clients due to his disability.

¶ 31    Kallan argued that, applying the rules of statutory construction, Rule 776 is not as restrictive as argued by the Administrator. Kallan cited to the language in Rule 776(b) that the receiver is to take whatever other action that may be necessary to protect the interest of said attorney, which is Mr. Grnacek, his clients, and other affected parties. Kallan argued that he had complied with that authorization by representing Grnacek's clients and that the judicial system and the ARDC were the "other affected parties" to his representation of Grnacek's clients. He also argued that he had protected Grnacek's interests, stating that one client had filed a request for an investigation of Grnacek with the ARDC and speculating that Grnacek's clients could have filed disciplinary complaints or civil lawsuits against Grnacek for failing to complete their legal matters.

¶ 32    Kallan told the circuit court that he had not wanted to represent Grnacek's clients and that, "It's not something that I would have said, 'Oh, I'm going to represent you guys and I'm going to seek compensation from the Attorney Registration and Disciplinary Commission; they'll pay me.' That's not how this worked at all. I had a number of clients who had–Mr. Grnacek's clients who had paid up front. There was no money left, and I felt that in order to protect their interest and their rights I would do this–represent the clients." Kallan concluded his argument by stating that it is within the discretion of the chief judge of each judicial circuit to determine whether a receiver's services are extraordinary, and the circuit court did not abuse its discretion in awarding him attorney fees.

¶ 33    In rebuttal, the Administrator argued that if Kallan's interpretation of Rule 776 were adopted by the circuit court, costs associated with receiverships could spiral out of control if receivers took on the representation of the clients of the lawyer for whom the receivership was established. The Administrator cited to the example of a disabled lawyer's law practice of criminal defense or class action litigation, where a receiver's representation of the disabled lawyer's clients could consist of complex and lengthy trials. He argued that the payment of attorney fees for such representation, under Rule 776, would negatively affect the ability of the ARDC to administer the Disciplinary Fund. In response to Kallan's arguments regarding the language of Rule 776(b), authorizing the receiver to take whatever other steps are necessary to protect the interest of the disabled lawyer, his clients, or other affected parties, the Administrator argued that the rule did not envision the representation of the disabled lawyer's clients to conclusion of their legal matters in the list of the duties of the receiver.

¶ 34    On February 8, 2011, the circuit court issued a written order denying the Administrator's motion for reconsideration. The court rejected the Administrator's position that Rule 776 "envisioned the Receiver to be an individual who would simply facilitate in the closing of the office of the lawyer and not actually conduct trials that would lead to the disposition of the clients' underlying claims or disputes." The court found, rather, that Kallan's efforts in disposing of the cases of Grnacek's clients amounted to extraordinary efforts, as contemplated by Rule 776, that Kallan "went far beyond" what was required of him as a receiver in taking on Grnacek's clients and resolving their legal matters to conclusion. The court concluded, "That is the type of extraordinary effort that this Court believes the Rule envisioned."

¶ 35    On February 28, 2011, the circuit court allowed the Administrator's motion for a stay of enforcement of the judgment. On March 10, 2011, the Administrator filed a notice of appeal from the order of November 29, 2010, and the order of February 2, 2011, denying the Administrator's motion for reconsideration.

¶ 36    On March 21, 2011, the supreme court denied the Administrator's motion for a supervisory order to direct Judge Kinney to vacate the award of compensation to Kallan for his attorney fees in representing Grnacek's clients to the completion of their legal matters. The supreme court denied the motion for a supervisory order without prejudice to file an appeal in this court from the circuit court orders. This appeal followed.

¶ 37                                          ANALYSIS

¶ 38    This case presents an issue of first impression of the construction of Supreme Court Rule 776. The construction of a statute is a question of law reviewed *de novo*. *People v. Williams*, 239 Ill. 2d 119, 127 (2010); *In re Marriage of Anderson*, 405 Ill. App. 3d 1129, 1134 (2010). The rules of statutory construction apply equally to the construction of the supreme court rules, and the lower court's construction of the supreme court rules is reviewed *de novo*. *People v. Garstecki*, 382 Ill. App. 3d 802, 810 (2008), *aff'd*, 234 Ill. 2d 430, 437 (2009).

¶ 39    The ARDC is the body created by the supreme court for the supervision, registration, and prosecution of disciplinary proceedings affecting members of the Illinois bar. Ill. S. Ct. R. 751(a) (eff. Jan. 1, 2010). Jerome Larkin, as Administrator, is the principal executive officer of the ARDC, having been appointed to that position by the Commissioners with the approval of the supreme court. Ill. S. Ct. R. 751(e)(l) (eff. Jan. 1, 2010). One of the functions of the ARDC is to "collect and administer the disciplinary fund provided for in Rule 756." Ill. S. Ct. R. 751(e)(6) (eff. Jan. 1, 2010). Supreme Court Rule 756, in turn, provides for a schedule of registration fees to be paid by Illinois lawyers and collected by the Administrator. Thus, the Disciplinary Fund consists of monies paid by the licensed attorneys in this state. Ill. S. Ct. R. 756 (eff. Sept. 1, 2011).

¶ 40    The supreme court, pursuant to Supreme Court Rule 776, relies on members of the local bar and the circuit courts to identify lawyers who are unable to properly discharge their responsibilities to clients due to disability, disappearance, or death, and who have no partner, associate, executor, or other responsible party who is capable of conducting the lawyers' affairs. Ill. S. Ct. R. 776(a) (eff. Mar. 25, 1991). The supreme court further relies on the presiding judge of the circuit court in which such a lawyer maintained a law practice to appoint another lawyer from the same judicial circuit to serve as a receiver. *Id.* Where no attorney from the judicial circuit is available to serve as a receiver, the Administrator is appointed to perform the duties of the receiver. Ill. S. Ct. R. 776(b)(2) (eff. Mar. 25, 1991).

¶ 41    Subsection (b) of Rule 776 sets forth the duties of a receiver with regard to the law practice of a disabled, deceased or missing lawyer as follows:

> "As expeditiously as possible, the receiver shall take custody of and make an inventory of the lawyer's files, notify the lawyer's clients in all pending cases as to the lawyer's disability, or inability to continue legal representation, and recommend prompt substitution of attorneys, take appropriate steps to sequester client funds of the lawyer,
>     and to take whatever other action is indicated to protect the interests of the attorney, his clients, and other affected parties." Ill. S. Ct. R. 776(b) (eff. Mar. 25, 1991).

¶ 42    Thus, the duties of the receiver under Rule 776(b) are consistent with the general principles governing receiverships. Our supreme court has held that the object of a receivership is "to secure and preserve the property or thing in controversy for the benefit of all concerned *** so that it might be subjected to such order or decree as the court might make or render." *Firebaugh v. McGovern*, 404 Ill. 143, 149 (1949). The person appointed as the receiver serves as an officer of the court, securing and preserving the property in question on behalf of the court for the benefit of all concerned until such time as the court enters an order for the disposition of the property. *People ex rel. Scott v. Pintozzi*, 50 Ill. 2d

115, 123 (1971); see also *Jones v. Hodges*, 2 Ill. App. 2d 509, 517-18 (1954) (receiver was an officer of the court and held money and property subject to the order and direction of the court). The receiver must inform the court of his intentions with regard to the receivership and obtain the court's permission to take any action affecting the property in his care. In *City of Chicago v. Hart Building Corp.*, 116 Ill. App. 2d 39, 51 (1969), the court found that an attorney who held property as a receiver and secretly acquired ownership of the same property breached the trust placed in him by the court that appointed him as the receiver. As such, a receiver has "no discretion or personal control over the property in his hands." *First National Bank of Vandalia v. Trail Ridge Farm, Inc.*, 143 Ill. App. 3d 244, 251 (1986) (receiver not liable to investors for following court directives concerning the assets in his possession).

¶ 43    Similarly, the duties of the receiver under Rule 776(b) are intended to ensure that the rights of the disabled lawyer's clients are not prejudiced by virtue of the lawyer's inability to continue representing them by, for example, notifying the clients of the disability of their lawyer, advising the clients to promptly seek substitution of other counsel, and preserving their funds held by the disabled lawyer. Ill. S. Ct. R. 776(b) (eff. Mar. 25, 1991).

¶ 44    Subsection (c) of Rule 776 authorizes the receiver to appear in court on behalf of the clients of the lawyer for whom the receivership was established under certain exigent circumstances. Receivers may "apply to the court for a stay of any applicable statute of limitation, or limitation on time for appeal, or to vacate or obtain relief from any judgment, for a period not to exceed 60 days." Ill. S. Ct. R. 776(c) (eff. Mar. 25, 1991). The provision of Rule 776(c) is consistent with the receiver's duties under subsection (b) of Rule 776 to take necessary steps to protect the interests of the disabled lawyer and his clients until new counsel can be retained to assist the clients in their pending legal matters.

¶ 45    Subsection (d) of Rule 776 is entitled, "Liability of Receiver." Subsection (d)(1) expressly provides that the receiver shall "not be regarded as having an attorney-client relationship with the clients of the disabled, absent or deceased lawyer." Ill. S. Ct. R. 776(d)(1) (eff. Mar. 25, 1991). Subsections (d)(2) and (d)(3) protect the receiver from any liability to the clients or to the lawyer for whom the receivership was established for exercising authorized duties as the receiver. Ill. S. Ct. Rs. 776(d)(2), (d)(3) (eff. Mar. 25, 1991).

¶ 46    Subsection (e) of Rule 776 provides the authorization for compensation of a receiver. As the general rule, receivers "shall normally serve without compensation." Ill. S. Ct. R. 776(e)(1) (eff. Mar. 25, 1991). However, Rule 776(e)(2) allows a receiver to seek compensation for services related to the receivership under the following limited circumstances:

> "[U]pon showing by the receiver that the nature of the receivership was extraordinary and that failure to award compensation would work substantial hardship on the receiver, the court may award reasonable compensation to the receiver to be paid out of the Disciplinary Fund, or any other fund that may be designated by the supreme court. In such event, compensation shall be awarded only to the extent that the efforts of the receiver have exceeded those normally required in an amount to be determined by the

court." Ill. S. Ct. R. 776(e)(2) (eff. Mar. 25, 1991).

¶ 47    Thus, under Rule 776(e)(2), if the receiver establishes that the nature of the receivership was extraordinary, the receiver must further demonstrate that the failure to award compensation would work a substantial hardship on the receiver. After the receiver meets those two criteria, the circuit court may award compensation, but only to the extent that the efforts of the receiver exceeded those normally required of a receiver.

¶ 48    We believe the nature of a receivership may be considered "extraordinary" where, for example, the receivership involves a law office in disarray that requires hundreds of hours of labor to organize documents and files, or where the receiver is required to file numerous motions to vacate dismissals for want of prosecution or to stay the statute of limitations in a high-volume personal injury practice. The nature of the receivership might also be considered "extraordinary" where the receiver discovers client files containing wills prepared years earlier and the receiver is required to spend considerable time to locate the clients or to file the wills in the probate court to protect the interests of unfound clients.

¶ 49    Representation of the disabled lawyer's clients in pending legal matters is not contemplated as a duty to be performed by a receiver under Supreme Court Rule 776. See Ill. S. Ct. R. 776(c) (eff. Mar. 25, 1991) (authorizing a receiver to appear in court to seek immediate relief to protect the rights of the clients of the lawyer for whom the receivership was established); Ill. S. Ct. R. 776(d)(l) (eff. Mar. 25, 1991) ("A receiver appointed pursuant to this rule shall *** not be regarded as having an attorney-client relationship with the clients of the disabled, absent or deceased lawyer ***."); Ill. S. Ct. R. 776(e)(l) (eff. Mar. 25, 1991) ("The receiver shall normally serve without compensation."). Representation of the clients of the disabled or deceased lawyer in the clients' underlying legal matters beyond that described in Rule 776(c) is not a duty of a receiver, ordinary, extraordinary, or otherwise.

¶ 50    The goal of construction of a rule or statute is to ascertain and give effect to the intent of the drafters. *In re Estate of Rennick*, 181 Ill. 2d 395, 404-05 (1998). As the supreme court held in *Rennick*, "The most reliable indicator of intent is the language used, which should be given its plain and ordinary meaning." *Id.* at 405. In addition, it is a well-settled maxim of statutory construction that each provision of a statute or rule should be construed in connection with every other section so that no part is rendered meaningless or superfluous. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440-41 (2010); *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 389-90 (2009). The circuit court's application of Rule 776(e)(2) as authorizing the award of attorney fees to a receiver who entered into an attorney-client relationship with the clients of the disabled lawyer for whom the receivership was established disregarded the language of Rule 776(d)(l) and Rule 776(e)(l), rendering those provisions meaningless. Where the supreme court expressly provided that the receiver shall not be regarded as having an attorney-client relationship with those clients and that the receiver shall normally serve without compensation, Rule 776(e)(2) should not be construed to authorize compensation to a receiver for attorney fees in representing the clients of the disabled lawyer for whom the receivership was established–not with regard to the receivership–but in their underlying legal matters.

¶ 51    There is no doubt that the rule authorizes compensation only for work done as a receiver.

Given the language of the rule, which states that no attorney-client relationship is created, work done in furtherance of an attorney-client relationship is outside the gambit of the rule. Kallan concedes that he was not acting as a receiver when he performed legal service for Grnacek's former clients.

¶ 52    Kallan did not enter into a fee agreement with any of Grnacek's clients before providing legal services to them, neither did he seek compensation for his attorney fees from Grnacek, who had already been paid for the representation of those clients. Nothing in Supreme Court Rule 776 obligated Kallan, as the receiver, to represent Grnacek's clients. The evidence presented to the circuit court demonstrated that Kallan acted beyond the scope of his duties as receiver, not out of a belief that it was required of him as receiver, but, rather, out of friendship and loyalty to Grnacek. No doubt Kallan's decision to take up Grnacek's yoke is admirable. We also agree that Kallan's services to these clients undoubtedly avoided additional litigation.

¶ 53    The circuit court acknowledged, in the order denying the Administrator's motion for reconsideration, that Kallan went beyond the responsibilities of a receiver enumerated under Supreme Court Rule 776(b) in taking on the representation of Grnacek's clients. The circuit court found that Kallan's efforts were the type of "extraordinary effort" envisioned by Supreme Court Rule 776(e)(2).

¶ 54    We believe that Kallan was motivated by a desire to help his friend and to protect the legal profession. However, the fact that Kallan acted with the best of intentions does not change the fact that Rule 776 does not authorize the trial court to order the ARDC to pay what amounts to the legal fees of Grnacek's former clients.

¶ 55                          CONCLUSION

¶ 56    For the foregoing reasons, the judgment of the circuit court of Will County is reversed.

¶ 57    Reversed.